Philip D. Stern
Andrew T. Thomasson
STERN•THOMASSON LLP
150 Morris Avenue, 2nd Floor
Springfield, New Jersey 07081-1315
(973) 379-7500

*Attorneys for Plaintiff, Estimé Dieuveille*

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| ESTIMÉ DIEUVEILLE, on behalf of him all othersself and all others similarly situated,<br>　　　　　　　　　　　Plaintiff,<br><br>　　　　　*vs.*<br><br>CAVALRY SPV I, LLC; CAVALRY PORTFOLIO SERVICES LLC; APOTHAKER SCIAN P.C.; KIMBERLY F. SCIAN, ESQ.; and JOHN AND JANE DOES numbers 1 through 100,<br>　　　　　　　　　　　Defendants. | **CLASS ACTION COMPLAINT AND JURY DEMAND** |

　　　　Plaintiff, Estimé Dieuveille, ("Plaintiff" or "DIEUVEILLE"), by way of this Complaint against Defendants Cavalry SPV I, LLC ("C-SPV"), Cavalry Portfolio Services LLC ("CPS"), Apothakar Scian P.C. ("ASPC"); Kimberly F. Scian, Esq. ("SCIAN"), and John and Jane Does numbers 1 through 100 ("DOES"), (collectively, "Defendants"), says:

#### PRELIMINARY STATEMENT

　　　　**1.**　　　　This action primarily stems from Defendants' violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq.* by commencing litigation against DIEUVEILLE in an attempt to collect on a time-barred debt. *See*, *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 32-33 (3d Cir. 2011) ("the majority of courts have held

that when the expiration of the statute of limitations does not invalidate a debt, but merely renders it unenforceable, the FDCPA permits a debt collector to seek voluntary repayment of the time-barred debt *so long as the debt collector does not initiate or threaten legal action in connection with its debt collection efforts*. … We agree ….").

2. The Defendants' filing of litigation against DIEUVEILLE to collect a time-barred debt was an act consistent with a course of conduct and practice which was either designed to, or had as its natural consequence, an attempt to obtain money from consumers through the use of false, misleading, deceptive, abusive, unfair, unconscionable, and unlawful statements and conduct prohibited by the FDCPA.

## PARTIES

3. DIEUVEILLE is a natural person who is a citizen of the State of New Jersey residing in the City of Jersey City, Hudson County, New Jersey.

4. At all times relevant to the factual allegations of this Complaint, C-SPV was a for-profit Delaware limited liability company which is registered with the State of New Jersey to transact business in New Jersey as a foreign limited liability company and maintains its principal office at 500 Summit Lake Drive #400, Valhalla, New York 10595.

5. At all times relevant to the factual allegations of this Complaint, CPS was a for-profit Delaware limited liability company which is registered with the State of New Jersey to transact business in New Jersey as a foreign limited liability company and maintains its principal office at 500 Summit Lake Drive #400, Valhalla, New York 10595.

6. At all times relevant to the factual allegations of this Complaint, ASPC was a professional corporation of the State of New Jersey engaged in the practice of law with its principal office located at 520 Fellowship Road, Suite C306, Mt. Laurel, NJ 08054.

**7.** SCIAN, at all times relevant to this lawsuit, is a natural person who, on information and belief, is a citizen of the State of New Jersey residing in Marlton, an unincorporated community within Evesham Township, Burlington County, New Jersey.

**8.** DOES are sued under fictitious names as their true names and capacities are yet unknown to DIEUVEILLE. DIEUVEILLE intends to amend this Complaint by inserting the true names and capacities of these DOE defendants once they are ascertained.

**9.** On information and belief, DOES are natural persons and/or business entities all of whom reside or are located within the United States and personally created, instituted and, with knowledge that such practices were contrary to law, acted consistent with and oversaw policies and procedures used by C-SPV, CPS, ASPC and/or SCIAN and/or their respective agents or employees that are the subject of this Complaint. DOES personally control the illegal acts, policies, and practices utilized by C-SPV, CPS, ASPC and/or SCIAN and, therefore, are personally liable for the wrongdoing alleged in this Complaint. DOES also include, but are not limited to, individuals employed by the named Defendants who acted in concert with any of the Defendants and is a debt collector within the meaning of the FDCPA.

### JURISDICTION AND VENUE

**10.** Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331. Plaintiff has standing because, as alleged in this pleading, he has suffered an injury-in-fact caused by Defendants.

**11.** Venue is appropriate in this federal district pursuant to 28 U.S.C. § 1391 because the events giving rise to Plaintiffs' claims occurred within this federal judicial district, and because Defendants, individually or through the actions of persons authorized

to act on their behalf, regularly transact business within this federal judicial district and, therefore, reside in the State of New Jersey within the meaning of 28 U.S.C. § 1391(b) and (c).

## FACTS

12. Each of the specific acts alleged in this Complaint are alleged to be consistent with Defendants' abusive, unfair, unconscionable, and unlawful practices, which were designed to or had the natural consequence of attempting to improperly obtain money from consumers for the Defendants' economic benefit and to the detriment of both consumers and law abiding debt collectors.

### *C-SPV & CPS*

13. C-SPV is regularly engaged in the collection of debts by purchasing defaulted, charged-off open-ended consumer credit accounts ("Debts") for pennies on the dollar of their face-value.

14. C-SPV's principal purpose in purchasing the Debts is to collect the balances allegedly due.

15. Consistent with such purpose, C-SPV authorized CPS to attempt to collect the Debts.

16. CPS's principal purpose is to collect on defaulted financial obligations, which include the Debts.

17. CPS regularly attempts to collect debts owed or alleged to be owed to others including the Debts which are allegedly owed to C-SPV.

18. Through CPS, C-SPV indirectly attempts to collect the Debts on a regular basis.

**19.** On information and belief, the Debts were incurred, or alleged to have been incurred, for personal, family, or household purposes.

**20.** In connection with their debt collection purposes, C-SPV and CPS routinely hires other debt collectors, such as ASPC, SCIAN, and DOES to file lawsuits on their behalf against consumers in an effort to collect money on the Debts.

### *ASPC, Scian, and Does*

**21.** ASPC collects, and attempts to collect, defaulted financial obligations incurred, or alleged to have been incurred, for personal, family, or household purposes on behalf of creditors using the U.S. Mail, telephone, and Internet.

**22.** On information and belief, SCIAN is a principal owner, officer, director, shareholder, and/or managing partner of ASPC.

**23.** On information and belief, ASPC attempts to collect debts incurred, or alleged to have been incurred, for personal, family, or household purposes on behalf of creditors using the U.S. Mail, telephone, and Internet.

**24.** On information and belief, SCIAN personally implemented, and with knowledge such practices were contrary to law, engaged in, acted consistent with, managed, and oversaw all of the illegal policies and procedures used by himself and other employees of ASPC complained of herein.

**25.** On information and belief, SCIAN personally implemented, and with knowledge such practices were contrary to law, engaged in, acted consistent with, managed, and oversaw all of the illegal policies and procedures used by himself and other employees of ASPC complained of herein.

**26.** On information and belief, DOES is a principal owner, officer, director,

shareholder, and/or managing partner of ASPC.

27. On information and belief, DOES attempts to collect debts incurred, or alleged to have been incurred, for personal, family, or household purposes on behalf of creditors using the U.S. Mail, telephone, and Internet.

28. On information and belief, DOES personally implemented, and with knowledge such practices were contrary to law, engaged in, acted consistent with, managed, and oversaw all of the illegal policies and procedures used by himself and other employees of ASPC complained of herein.

29. On information and belief, DOES attempt to collect debts incurred, or alleged to have been incurred, for personal, family, or household purposes on behalf of creditors using the U.S. Mail, telephone, and Internet.

30. On information and belief, DOES' conduct was consistent with the training and supervision of ASPC including, but not limited to, SCIAN, as part of ASPC's attempts to collect debts from consumers.

### *The Defendants' Joint Enterprise*

31. On information and belief, C-SPV has filed at least 4,000 lawsuits against consumers in the State of New Jersey after April 5, 2016.

### *The Obligation*

32. Prior to 2011, DIEUVEILLE allegedly defaulted in making a payment due ("Obligation") on a certain credit card account issued and administered by FIA Card Services, N.A. ("FIA").

33. On information and belief, on May 31, 2011 and after concluding the

Obligation was in default, FIA charged-off[1] the account.

      **34.**    Defendants have contended the Obligation was placed with, obtained by or assigned by FIA to C-SPV on April 24, 2013 along with all other accounts whose information was provided to C-SPV in an editable Microsoft Excel electronic file referred to as "BAC PA Bulk Cavalry Sale File 0413 Final.xlsx" ("Data File").

      **35.**    The transfer of the Obligation from FIA to C-SPV was alleged to have been made pursuant to a certain Loan Sale Agreement dated April 15, 2013.

      **36.**    On information and belief, through the use of the Loan Sale Agreement, FIA put C-SPV on notice as to condition of the accounts included in the Data File. Such notice included, but is not limited to, the sale was without recourse, the accounts were in "as is" and "where is" condition, and FIA expressly disclaimed any representation or warranty as to (1) the marketability, value, quality or condition of any account, and (2) the collectability of the evidence of any indebtedness. Furthermore, C-SPV acknowledged that the accounts may have no liquidity (i.e., no ability to be converted to cash or a cash equivalent).

      **37.**    Sometime subsequent to April 24, 2013, C-SPV either directly or through

---

[1] "Federal regulations require banks issuing credit cards to charge off, that is declare uncollectible, credit card debts by the end of the month in which they become one hundred and eighty days past due." *New Century Fin. Servs., Inc. v. Oughla*, 437 N.J. Super. 299, 312 (App. Div. 2014). Creditors charge-off debts in accordance with federal regulations that permit the creditor to remove the debt from their financial records. *See* Victoria J. Haneman, *The Ethical Exploitation of the Unrepresented Consumer*, 73 Mo. L. Rev. 707, 713-14 (2008) ("a credit card account is characterized as a 'charge-off' account (or worthless account for taxable purposes) when no payment has been received for 180 days."). These charged-off accounts are treated as a loss and the creditor receives a tax deduction under the Internal Revenue Code.

CPS assigned, placed, or transferred the Obligation to ASPC, SCIAN, or DOES for collection.

38. The Obligation arose out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes.

39. Defendants have asserted that DIEUVEILLE is liable to C-SPV on the Obligation.

40. The credit card account is subject to and the Obligation arises pursuant to a written agreement ("Agreement") issued by FIA.

### *The Original Creditor.*

41. At all times relevant to this action, FIA was a nationally-chartered bank located in Delaware.

42. All credit card accounts issued and administered by FIA were governed by written terms and conditions which always included the following agreement:

> **WHAT LAW APPLIES**
> This Agreement is made in Delaware and we extend credit to you from Delaware. This Agreement is governed by the laws of the State of Delaware (without regard to its conflict of laws principles) and by any applicable federal laws.

### *Collecting the Obligation*

43. Sometime subsequent to April 24, 2013, C-SPV either directly or through intermediate transactions assigned, placed, or transferred the Obligation to ASPC, SCIAN, or DOES for collection.

44. On April 6, 2016, Defendants commenced a lawsuit ("Collection Action") against DIEUVEILLE by filing a complaint ("Collection Complaint") in the Superior

Court of New Jersey.

**45.** The Collection Action is styled as *Cavalry SPV I, LLC, as assignee of FIA Card Services, N.A./Bank of America, N.A. vs. Estime Dieuveille*, and designated by Docket No. HUD-L-001447-16.

**46.** The Collection Complaint did not disclose the date on which the claims were alleged to have accrued.

**47.** Defendants applied for and obtained a Final Judgment by Default against DIEUVEILLE on August 15, 2016.

**48.** Unaware of the Judgment until March 2017, DIEUVEILLE filed a *pro se* Motion in the Collection Action to vacate default judgment. The Motion was granted on March 31, 2017 thereby filing DIEUVEILLE's *pro se* Answer including his defense based on the statute of limitations.

**49.** Based on the terms and conditions governing the Obligation, New Jersey courts apply Delaware's three-year limitations period. 10 Del. Code Ann. § 8106(a).

**50.** The three-year period expired before Defendants commenced the Collection Action.

**51.** Defendants attempted to collect the Obligation by commencing the Collection Action on a time-barred debt.

**52.** As a direct, proximate and legal cause of Defendants' commencement of the Collection Action, DIEUVEILLE suffered actual damages including, but not limited to, payment of fees and costs to defend the Collection Action.

### CAUSE OF ACTION FOR VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT AGAINST ALL DEFENDANTS

53. DIEUVEILLE repeats the foregoing factual allegations by reference.

54. The alleged Obligation is a "debt" as defined by 15 U.S.C. § 1692a(5).

55. DIEUVEILLE is a "consumer" as defined by 15 U.S.C. § 1692a(3).

56. C-SPV is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

57. CPS is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

58. ASPC is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

59. SCIAN is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

60. The Defendants violated the FDCPA.

61. By way of background as to DIEUVEILLE's claim for violations of the FDCPA, DIEUVEILLE asserts:

>  (a) The FDCPA regulates the behavior of Debt Collector Defendants attempting to collect a debt on behalf of another. The United States Congress has found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many Debt Collector Defendants, and has determined that abusive debt collection practices contribute to a number of personal bankruptcies, marital instability, loss of jobs, and invasions of individual privacy. 15 U.S.C. §§ 1692(a) & 1692(b). Consequently, Congress adopted the FDCPA with the "express purpose to eliminate abusive debt collection practices by Debt Collector Defendants, and to insure that those Debt Collector Defendants who refrain from using abusive debt collection practices are not competitively disadvantaged." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573 (2010) (internal quotes omitted); 15 U.S.C. § 1692(e).
>
>  (b) The Act is not concerned with whether the consumer owes the debt, rather, "[a] basic tenet of the Act is that all consumers, even those who have mismanaged their financial affairs resulting in default on their debt, deserve the right to be treated in a reasonable and civil manner." *FTC v. Check Investors, Inc.*, 502 F.3d 159, 165 (3d Cir. 2007)(internal citations omitted).

(c) "Congress also intended the FDCPA to be self-enforcing by private attorney generals." *Weiss v. Regal Collections*, 385 F.3d 337, 345 (3d Cir. 2004).

(d) The FDCPA is construed broadly so as to effectuate its remedial purposes and a debt collector's conduct is judged from the standpoint of the "least sophisticated consumer," *Brown v. Card Serv. Ctr*, 464 F.3d 450, 453n1 (3d Cir. 2006). In this way, "the FDCPA protects all consumers, the gullible as well as the shrewd." *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993). For example, a "debt collection letter is deceptive where it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Id.* at 455.

(e) "To prevail on an FDCPA claim, a plaintiff must prove that (1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014).

(f) The fact that the target of the collection activity happens to be sophisticated or an attorney is irrelevant. Indeed, while some courts have held the failure to make required disclosures per § 1692e(11) to a consumer's lawyer might not be actionable, they have cautioned that their rulings do "*not* hold that the disclosure requirement can be satisfied without fulfilling the statutory requirements in the case of direct communication with the debtor merely because the debtor is a sophisticated consumer or is informed about the law or a practicing lawyer." *Ignatowski v. GC Servs.*, 3 F. Supp. 2d 187, 191 n. 7 (D. Conn. 1998). The essential reasoning is that compliance with the statute is based on the perspective of the lease sophisticated consumer. *Rosenau v. Unifund Corp.*, 539 F.3d 218, 224 (3d Cir. 2008). Consequently, "the FDCPA protects all consumers, the gullible as well as the shrewd." *Lesher v. Law Offices Of Mitchell N. Kay, PC*, 650 F.3d 993, 997 (3d Cir. 2011); *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993).

(g) Except where the Act expressly makes knowledge or intent an element of the violation, the "FDCPA is a strict liability statute." *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 368 (3d Cir. 2011) (citing in footnote 7, supporting authorities from the Second, Seventh, Ninth and Eleventh Circuits).

(h) In prohibiting deceptive practices, the FDCPA, at 15 U.S.C. § 1692e, outlaws the use of false, deceptive, and misleading collection practices and names a non-exhaustive list of certain *per se* violations of false

and deceptive collection conduct. 15 U.S.C. § 1692e(1)-(16). Among the *per se* violations prohibited by that section are: false representations concerning the character, amount, or legal status of any debt, 15 U.S.C. §1692e(2)(A); Threatening to take any action that cannot legally be taken or that is not intended to be taken in violation of 15 U.S.C. §1692e(5); the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer, 15 U.S.C. § 1692e(10); and the failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, 15 U.S.C. § 1692e(11).

(i) To prohibit unconscionable and unfair practices, the FDCPA at 15 U.S.C. § 1692f, outlaws the use of unfair or unconscionable means to collect or attempt to collect any debt and names a non-exhaustive list of certain *per se* violations of unconscionable and unfair collection conduct. 15 U.S.C. §§ 1692f (1)-(8). Included among the *per se* violations prohibited in this section are the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly permitted by law, 15 U.S.C. § 1692f(1).

(j) A debt collector who violates any provision of the FDCPA is liable for "additional damages" (also called "statutory damages") up to $1,000.00, and attorney's fees and costs. 15 U.S.C. § 1692k(a). The absence of actual damages is not a bar to such actions as "Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute." *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 n3 (1973). Indeed, Congress, through "the FDCPA[,] permits and encourages parties who have suffered no loss to bring civil actions for statutory violations." *Jacobson, supra,* 516 F.3d at 96 (emphasis added).

(k) The FDCPA also provides for class relief "capped" at the lesser of $500,000 or 1% of the debt collector's net worth. 15 U.S.C. § 1692k(a)(2)(B). "Representative actions, therefore, appear to be fundamental to the statutory structure of the FDCPA." *Weiss, supra,* 385 F.3d at 345. Indeed, while limiting class relief, Congress nevertheless recognized the effectiveness of class actions to enforce the FDCPA and, therefore, mandated that a class action should be maintained "without regard to a minimum individual recovery." *Id.* When a debt collector opposes class certification based on its minimal or negative net worth, "there is a chance that no claims would proceed against Defendants due to

a lack of financial incentive, thereby leaving unpunished allegedly thousands of FDCPA violations. This is exactly the kind of result Congress intended to avoid through the creation of the class action form." *Barkouras v. Hecker*, 2006 WL 3544585, 2006 U.S.Dist.Lexis 88998 (D.N.J. Dec. 8, 2006).

    (l)    In addition to economic damages, actual damages are recoverable for emotional distress. "[V]iolations of the FDCPA, by their very nature, are those kinds of actions which may be expected to cause emotional distress and, therefore, the availability of damages for such distress is of paramount importance." *Crossley v. Lieberman*, 90 B.R. 682, 692 (E.D. Pa. 1988) *aff'd*, 868 F.2d 566 (3d Cir. 1989). A consumer can recover "damages for personal humiliation, embarrassment, mental anguish, or emotional distress." *Statements of General Policy or Interpretation Staff Commentary On the Fair Debt Collection Practices Act*, 53 FR 50097-02, 50109; *Smith v. Law Offices of Mitchell N. Kay*, 124 B.R. 182, 185 (D. Del. 1991). Such damages can include recovery for "anxiety, nervousness, worry, and fear." *Armbruster v. Hecker*, 2010 WL 1643599 (M.D. Pa. Apr. 22, 2010). "Congress did not limit the recovery of actual damages for emotional distress under the FDCPA or FCRA to those damages a plaintiff could have recovered under state law in a separate tort action for intentional or negligent infliction of emotional distress." *Smith, supra* at 188.

**62.** Defendants' commencement of the Collection Action violated the FDCPA in one or more of the following ways:

    (a)    Using false, deceptive, or misleading representations and/or means in connection with the collection of any debt which constitutes a violation of 15 U.S.C. §1692e including but not limited to:

      i. Falsely representing the character of the Debt in violation of 15 U.S.C. § 1692e(2)(A);

      ii. Falsely representing the legal status of the Debt in violation of 15 U.S.C. § 1692e(2)(A);

      iii. Threatening to take any action that cannot legally be taken or that is not intended to be taken in violation of 15 U.S.C. §1692e(5); and

      iv. Using a false representation and/or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer in violation of 15 U.S.C. § 1692e(10); and

  (b)    Using unfair or unconscionable means to collect or attempt to collect a debt in violation of 15 U.S.C. § 1692f including but not limited to collecting or attempting to collect an amount not permitted by law in violation of 15 U.S.C. § 1692f(1).

**63.** Based on any one of those violations, Defendants are liable to DIEUVEILLE for statutory damages, attorney's fees and costs under 15 U.S.C. § 1692k

**64.** As a direct, proximate, and legal cause of the Defendants' violations of the FDCPA, DIEUVEILLE has suffered actual damages.

## CLASS CLAIMS AGAINST THE DEFENDANTS

**65.** DIEUVEILLE repeats the foregoing allegations by reference.

**66.** This action is brought as a class action. DIEUVEILLE brings this action on behalf of himself and on behalf of all other persons similarly situated pursuant to Fed.R.Civ.P. 23.

**67.** On information and belief, it is Defendants' policy and practice to sue on debts which appear to arise from credit card accounts governed by a Delaware choice-of-law contract without regard to whether Delaware's three-year limitations period has expired. Such policy and practice is alleged to be in violation of the FDCPA including 15 U.S.C. §§ 1692e and 1692f.

**68.** DIEUVEILLE seeks to certify a class of those persons sued by Defendants on similar time-barred debts in violation of the FDCPA.

69. Subject to discovery and further investigation which may cause DIEUVEILLE to modify the following class definition at the time he moves for class certification (which may be more expansive to include consumers excluded from the following definition but who were named as a defendant in a lawsuit on a time-barred debt), DIEUVEILLE defines the "Class" as follows:

> Excluding persons who, prior to the date this action is certified to proceed as a class action, either
> (a) obtained a discharge in bankruptcy,
> (b) commenced an action in any court against any Defendant alleging a violation of the Fair Debt Collection Practices Act,
> (c) signed a general release of claims against Defendants, or
> (d) is a Judge assigned to this case or member of such Judge's staff or immediate family,
>
> the **Class** consists of each natural person who was named as a defendant in a Lawsuit commenced in the name of Cavalry SPV I LLC during the Class Period in an attempt to collect on a Stale Debt where:
> "Class Period" means the period beginning on and including April 6, 2016 and ending on and April 30, 2017;
> "Lawsuit" means a civil action commenced in the Superior Court of New Jersey;
> "Stale Debt" means a financial obligation owed or alleged to be owed on a credit card account sold by FIA Card Services, N.A. when either:
> (*i*) the last payment on that account was more than three years and 35 days before the date the Lawsuit was commenced, or
> (*ii*) the date of charge-off as shown in the records obtained by Cavalry SPV I LLC or Cavalry Portfolio Services LLC is more than two years and 185 days before the date the Lawsuit was commenced.

70. Subject to discovery and further investigation which may cause DIEUVEILLE to modify the following definition of the "Class Claims" at the time DIEUVEILLE moves for class certification, DIEUVEILLE defines the Class Claims as:

> All claims arising under the Fair Debt Collection Practices Act based on or arising from Defendants' commencement of a civil action in the Superior Court of New Jersey.

**71.** Based on discovery and further investigation (including, but not limited to, Defendant's disclosure of class size and net worth), Plaintiff may, in addition to moving for class certification using modified definitions of the Class and Class Claims, seek certification only as to particular issues as permitted under Fed.R.Civ.P. 23.

**72.** The identity of each member of the Class is readily ascertainable from Defendants' records as well as from the records of the courts in which Defendants sued consumers.

**73.** This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Fed.R.Civ.P. 23 because there is a well-defined community of interests in the litigation in that:

(a) *Numerosity.* Plaintiff is informed and believes, and on that basis alleges, that the members of the Class are so numerous that joinder of all members would be impractical. On information and belief, there are more than 40 members of the Class.

(b) *Commonality.* Common questions of law and fact exist as to all members of the Class, the principal issues are whether Defendants' commencement of lawsuits on time-barred debts violates the FDCPA (including, but not limited to 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), 1692(10), 1692f, and 1692f(1)).

(c) *Typicality.* DIEUVEILLE's claims are typical of the claims of the class members. He and all members of the Class have claims arising out of the common and uniform course of conduct as alleged in this Complaint.

(d) *Adequacy.* DIEUVEILLE will fairly and adequately protect the interests of the class members insofar as he has no interests that are adverse to the absent class members. DIEUVEILLE is committed to vigorously litigating this matter. DIEUVEILLE has also retained counsel experienced in handling consumer lawsuits, complex legal issues, and class actions. DIEUVEILLE and his counsel have no interests which might cause them not to vigorously pursue the instant class action lawsuit.

74. This action may be maintained as a "B1a-class", a "B2-class", a "B3-class", or a hybrid of any two or all three types however, at the time of commencing this action, Plaintiff expects to seek certification of the Class under Fed.R.Civ.P. 23(b)(3) because:

(a) the questions of law and fact common to members of the Class appear to predominate over any questions affecting an individual member, and

(b) a class action would be superior to other available methods for the fair and efficient adjudication of the controversy because individual joinder of all members would be impracticable, class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum efficiently and without unnecessary duplication of effort and expense that individual actions would engender, an important public interest will be served by addressing the matter as a class action, substantial expenses to the litigants and to the judicial system will be realized, and difficulties are unlikely in the management of a class action.

## PRAYER FOR RELIEF

75. WHEREFORE, DIEUVEILLE respectfully requests that the Court enter judgment against Defendants, jointly and severally, as follows:

- 75.01. An order certifying that the Cause of Action may be maintained as a class pursuant to Fed.R.Civ.P. 23 including defining the class, defining the class claims, and appointing DIEUVEILLE as the class representative and the undersigned attorney as class counsel;

- 75.02. An award of actual damages to DIEUVEILLE and to each member of the Class who suffered actual damages;

- 75.03. An award of statutory damages for DIEUVEILLE pursuant to 15 U.S.C. § 1692k(a)(2)(A) and § 1692k(a)(2)(B)(i);

- 75.04. An award of statutory damages for the Class pursuant to 15 U.S.C. § 1692k(a)(2)(B)(ii);

- 75.05. Attorney's fees, litigation expenses, and costs pursuant to 15 U.S.C. § 1692k(a)(B)(3); and

- 75.06. For such other and further relief as may be just and proper.

## JURY DEMAND

76. Plaintiff, Estimé Dieuveille, hereby demands trial by jury on all issues so triable.

> Stern•Thomasson LLP
> Attorneys for Plaintiff, Estimé Dieuveille
> By: *s/Philip D. Stern*
> Philip D. Stern

Dated: April 5, 2017

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

77. I hereby certify to the best of my knowledge that the matter in controversy is not the subject of any other action pending in any court or the subject of a pending arbitration proceeding, nor is any other action or arbitration proceeding contemplated except: *Jae H. Oh v. Cavalry SPV I, LLC, et al.*, Case 2:16-cv-05127-JLL-SCM, which has been consolidated for discovery purposes only with *Janice L. Pepe v. Cavalry SPV I, LLC, et al.*, Case 2:15-cv-08634-WJM-MF.

78. I further certify that I know of no party, other than putative class members, who should be joined in the action at this time.

Dated: April 5, 2017

*s/Philip D. Stern*
Philip D. Stern